## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE CHIQUITA BRANDS INT'L, INC. ALIEN TORT STATUTE AND SHAREHOLDER DERIVATIVE LITIGATION | : : : : | MDL Docket No. _____ |

### MOTION OF DEFENDANTS FOR TRANSFER OF ACTIONS TO THE DISTRICT OF COLUMBIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Defendants Chiquita Brands International, Inc. and Chiquita Fresh North America

LLC (collectively "Chiquita") respectfully move this Panel for transfer of the civil actions listed

in the attached Schedule of Actions that are not already pending in the United States District

Court for the District of Columbia to that court pursuant to 28 U.S.C. § 1407. For the reasons

stated in the accompanying brief, these cases should be transferred to the District of Columbia

for coordinated or consolidated pretrial proceedings with the two related civil actions listed the

Schedule of Actions that are already pending before Judge Paul Friedman in that district.

Chiquita respectfully requests that this motion be heard at the earliest possible

hearing date, including, if possible, at the Panel's January hearing session.

Respectfully submitted,

Eric H. Holder, Jr.
John E. Hall
James M. Garland
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Jonathan M. Sperling
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Facsimile: (212) 841-1010

COVINGTON & BURLING LLP

*Attorneys for Defendants*
  *Chiquita Brands International, Inc. &*
  *Chiquita Fresh North America LLC*

Dated:        November 26, 2007

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE CHIQUITA BRANDS INT'L, INC.
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION

MDL Docket No. _____

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR
## TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

Chiquita Brands International, Inc. and Chiquita Fresh North America LLC

(collectively "Chiquita") move to transfer the civil actions listed in the attached Schedule of

Actions (attached as Exhibit A)[1] that are not already pending in the United States District Court

for the District of Columbia to that court pursuant to 28 U.S.C. § 1407.[2]  These cases should be

---

[1]      The docket sheets and complaints for the six actions referenced in the Schedule of Actions are attached as Exhibits B-G in the order in which they appear in the Schedule.

[2]      The Schedule of Actions lists four actions brought against Chiquita that are pending in districts other than the District of Columbia: *Carrizosa et al. v. Chiquita Brands International, Inc. et al.*, No. 07-60821 (S.D. Fla.), *Does 1-7 et al. v. Chiquita Brands International, Inc. et al.*, No. 07-3406 (D.N.J.), *Does 1-377 v. Chiquita Brands, International, Inc. et al.*, No. 07-CV-10300 (S.D.N.Y.), and *City of Philadelphia Public Employees Retirement System v. Chiquita Brands International, Inc. et al.*, No. 07-00851 (S.D. Ohio).

transferred to the District of Columbia for coordinated or consolidated pretrial proceedings with the two related civil actions listed in the Schedule of Actions – including the first-filed action – that already are pending before Judge Paul Friedman in that district.[3]

Chiquita respectfully requests that this motion be heard at the earliest possible hearing date, including, if possible, at the Panel's January hearing session.

## FACTUAL BACKGROUND

Based on payments made by a former Chiquita subsidiary to a Colombian paramilitary group known as the Autodefensas Unidas de Colombia ("AUC"), Chiquita pled guilty on March 19, 2007, to one count of engaging in transactions with a Specially Designated Global Terrorist without obtaining authorization from the Department of Treasury's Office of Foreign Assets Control, in violation of 50 U.S.C. § 1705(b).[4]  The plea was entered in the United States District Court for the District of Columbia.  On September 17, 2007, Chiquita was sentenced, again in the United States District Court for the District of Columbia.

Beginning shortly after the criminal Information was filed, six groups of plaintiffs filed civil suits against Chiquita in five different U.S. district courts – all of them based on the factual allegations set forth in the Information or the Government's sentencing memorandum.

Four groups of plaintiffs are Colombian nationals who claim that they are legal heirs to individuals allegedly killed by the AUC and other armed groups in Colombia.[5]  These

---

[3]    The two actions already pending against Chiquita in the District of Columbia are: *Does 1-144 v. Chiquita Brands International, Inc. et al.*, No. 07-CV-01048 (D.D.C.), and *Sheet Metal Workers Local #218(S) Pension Fund v. Chiquita Brands International, Inc. et al.*, No. 07-CV-01957 (D.D.C.).

[4]    *See* Information ¶ 88, *United States v. Chiquita Brands International, Inc.*, No. 07-CR-055 (D.D.C. Mar. 13, 2007).

[5]    D.C. ATS Compl. ¶ 1; Fla. Compl. ¶¶ 1-2; N.J. Compl. ¶¶ 2, 6-11; N.Y. Compl. ¶¶ 6-7.

four groups have filed separate suits against Chiquita, in four different federal district courts, asserting claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350. The first complaint was filed in the United States District Court for the District of Columbia on June 7, 2007 ("D.C. ATS Complaint"). Subsequent complaints were filed in the Southern District of Florida on June 13, 2007 ("Florida Complaint"),[6] the District of New Jersey on August 3, 2007 ("New Jersey Complaint"), and the Southern District of New York on November 14, 2007 ("New York Complaint"). The other two groups of plaintiffs are Chiquita shareholders who allege that current and former directors and officers of Chiquita breached their fiduciary duties to the company by authorizing or allowing payments to the AUC.[7] These two shareholder plaintiffs, each seeking to act on behalf of Chiquita, have filed derivative suits pursuant to Federal Rule of Civil Procedure 23.1 in two federal district courts. One was filed in the Southern District of Ohio on October 12, 2007 ("Ohio Complaint"); the other in the District of Columbia on October 31, 2007 ("D.C. Derivative Complaint").[8]

## ARGUMENT

The ATS and derivative complaints should proceed in one district for coordinated or consolidated pretrial proceedings. Because the cases involve substantially overlapping issues of fact, coordination of these actions in a multidistrict litigation proceeding will avoid duplicative

---

[6]     On July 24, 2007, Chiquita moved to transfer that action to the District of Columbia, the forum of the first-filed complaint, pursuant to 28 U.S.C. § 1404. That motion was denied on November 14, 2007.

[7]     D.C. Deriv. Compl. ¶ 1; Ohio Compl. ¶ 1.

[8]     A third shareholder derivative suit was filed in New Jersey Superior Court on October 30, 2007. Chiquita intends to move to stay that action pending resolution of the federal proceedings, which were commenced earlier.

discovery and prevent inconsistent pretrial rulings, thereby promoting the efficient resolution of these cases for the parties and the judiciary.[9]

The United States District Court for the District of Columbia is the most appropriate transferee forum for these cases, as it is the site of the first-filed case and the only district in which multiple proceedings already are pending before the same judge. For these reasons – and because D.C. is the location of certain events alleged in the complaints, the location of many documents relevant to allegations in the complaints, and the location of more of the lawyers involved in these suits than any other – these actions should be transferred to the District of Columbia.

I.    **These Cases Involve Common Questions of Fact.**

The four ATS cases involve a number of identical factual issues. The ATS complaints allege, in substance, that by making payments to the AUC in Colombia, Chiquita is legally responsible for the deaths of plaintiffs' family members. Each ATS complaint alleges that Chiquita, through its former Colombian subsidiary, C.I. Bananos de Exportación, S.A. ("Banadex"), paid $1.7 million to the AUC between 1997 and 2004,[10] and that the officers and employees of Chiquita reviewed and authorized these payments.[11] All of the ATS plaintiffs further allege that Chiquita knew or had reason to know of the scope of the AUC's activities, but nonetheless continued to provide financial support to the AUC.[12] Each complaint asserts causes

---

[9]    *See* 28 U.S.C. § 1407.

[10]    D.C. ATS Compl. ¶ 219; Fla. Compl. ¶¶ 28-30; N.J. Compl. ¶ 33; N.Y. Compl. ¶¶ 495, 575.

[11]    D.C. ATS Compl. ¶ 223; Fla. Compl. ¶ 32; N.J. Compl. ¶ 33; N.Y. Compl. ¶ 498.

[12]    D.C. ATS Compl. ¶¶ 231-32; Fla. Compl. ¶ 32; N.J. Compl. ¶¶ 33-34; N.Y. Compl. ¶ 498.

4

of action under the ATS, 28 U.S.C. § 1350,[13] and three of the complaints assert causes of action under the Torture Victim Protection Act, 28 U.S.C. § 1350 note.[14] (Each ATS complaint also asserts a variety of state common law tort claims.)[15] Although each ATS plaintiff ultimately will be required to prove unique issues of causation and damages, the basic factual allegations regarding Chiquita's conduct, upon which plaintiffs purport to base their claims of liability, are common to all plaintiffs.

The two derivative complaints also involve several identical issues. Both of them allege, in substance, that defendants breached their fiduciary duties and caused harm to Chiquita by (i) permitting or authorizing illegal payments to the AUC,[16] (ii) improperly recording the payments in Chiquita's books and records,[17] and (iii) failing to take adequate remedial action.[18] The two derivative complaints name six of the same individual defendants. Both allege that it would be futile to demand that the current Board of Directors take action, on the grounds that the Board purportedly is not independent and disinterested.[19] Both assert claims for breach of fiduciary duty,[20] and seek injunctive relief and recovery of monetary damages for alleged harm to the company.[21]

---

[13]    D.C. ATS Compl. ¶¶ 234-236; Fla. Compl. ¶¶ 64-75; N.J. Compl. ¶¶ 85-125; N.Y. Compl. ¶¶ 584-622.

[14]    D.C. ATS Compl. ¶¶ 237-239; N.J. Compl. ¶¶ 85-88, 94-97; N.Y. Compl. ¶¶ 623-632.

[15]    D.C. ATS Compl. ¶¶ 240-278; Fla. Compl. ¶¶ 76-84; N.J. Compl. ¶¶ 126-157; N.Y. Compl. ¶¶ 633-647.

[16]    D.C. Deriv. Compl. ¶¶ 4, 26, 27, 78-80, 83; Ohio Compl. ¶¶ 4, 10, 47-56.

[17]    D.C. Deriv. Compl. ¶¶ 1, 5, 11, 19, 43, 73, 77; Ohio Compl. ¶¶ 2, 36(c), 36(d).

[18]    D.C. Deriv. Compl. ¶¶ 100(a), 100(c), 103(a), 103(c); Ohio Compl. ¶¶ 2, 22, 37.

[19]    D.C. Deriv. Compl. ¶¶ 100-103; Ohio Compl. ¶¶ 63-69.

[20]    D.C. Deriv. Compl. ¶¶ 109-23; Ohio Compl. ¶¶ 70-76.

[21]    D.C. Deriv. Compl. p. 48-49; Ohio Compl. p. 24.

Critically, a substantial number of factual allegations are common to all six of the complaints listed in the Schedule of Actions, ATS and derivative. All six allege that Chiquita or its officers and directors had knowledge of the AUC's violent activities.[22] Both the ATS and derivative complaints further allege that Chiquita or its officers and directors provided money to the AUC to ensure smooth business operations and/or to suppress labor and community opposition,[23] and that Chiquita's payments to the AUC were made as a "price of doing business" in Colombia, in order to maintain its profitable control of Colombia's banana-growing regions.[24] Both the ATS and derivative plaintiffs also allege that Chiquita provided or facilitated the provision of supplies to the AUC,[25] that Chiquita or its individual officers and directors concealed or misreported payments to the AUC on the company's books and records,[26] and that Chiquita or its officers and directors improperly continued payments to the AUC following disclosure to the United States Department of Justice in April 2003, notwithstanding the advice of outside counsel.[27]

Additionally, Chiquita's defenses to both the ATS and derivative claims will involve common questions regarding (i) whether Chiquita was subject to violent attacks,

---

[22]    D.C. ATS Compl. ¶¶ 2, 231; Fla. Compl. ¶¶ 32, 68; N.J. Compl. ¶¶ 33, 34, 63, 66, 75; N.Y. Compl. ¶¶ 498, 576; D.C. Deriv. Compl. ¶¶ 6, 74; Ohio Compl. ¶¶ 7, 12, 43.

[23]    D.C. ATS Compl. ¶¶ 3, 211, 220; N.J. Compl. ¶¶ 2, 30, 32, 75; N.Y. Compl. ¶ 569; D.C. Deriv. Compl. ¶¶ 7, 8, 66.

[24]    D.C. ATS Compl. ¶ 185; N.J. Compl. ¶ 2; N.Y. Compl. ¶ 569; D.C. Deriv. Compl. ¶¶ 8, 66; Ohio Compl. ¶¶ 3, 42, 67, 68.

[25]    D.C. ATS Compl. ¶ 224; Fla. Compl. ¶ 73; N.J. Compl. ¶¶ 2, 30, 38-43; N.Y. Compl. ¶¶ 572-74, 578-83; D.C. Deriv. Compl. ¶¶ 6, 7, 64, 88; Ohio Compl. ¶ 14.

[26]    D.C. ATS Compl. ¶ 223; Fla. Compl. ¶ 31; N.J. Compl. ¶ 33; N.Y. Compl. ¶ 575; D.C. Deriv. Compl. ¶¶ 5, 11, 73; Ohio Compl. ¶ 41.

[27]    D.C. ATS Compl. ¶ 226; Fla. Compl. ¶¶ 35, 38; N.J. Compl. ¶¶ 35, 36; N.Y. Compl. ¶¶ 540-41; D.C. Deriv. Compl. ¶¶ 9, 79, 81; Ohio Compl ¶¶ 47, 50, 51.

intimidation, and harassment by the AUC, and (ii) whether and to what extent Chiquita profited or was enriched by, or its individual officers and directors personally gained from, payments to the AUC.

## II. Transfer Will Be Convenient For The Parties And Witnesses And Will Promote The Just And Efficient Conduct Of These Actions.

Transfer under section 1407 is warranted where consolidation would "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary."[28] As the Panel recently noted, "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues"; rather, transfer is appropriate where "all actions arise from the same factual milieu."[29] Because the complaints at issue here arise from the same alleged conduct and involve overlapping factual allegations, those requirements are clearly met.

### A. Elimination of Duplicative Discovery.

Although the ATS and derivative complaints assert different legal theories of Chiquita's liability, they clearly "arise from the same factual milieu." Transfer to one district for pretrial proceedings therefore would allow coordinated discovery of the common factual allegations on which all six actions are based.

This Panel routinely grants motions to coordinate cases, including shareholder derivative suits, with cases brought on different legal theories, where those cases "focus on a

---

[28]    *In re Orthopaedic Implant Device Antitrust Litig.*, 483 F. Supp. 2d 1355, 1355 (J.P.M.L. 2007); *see also, e.g.*, *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1347 (J.P.M.L. 2006).

[29]    *In re ClassicStar, Mare Lease Litigation*, __ F. Supp. 2d __, 2007 WL 3119300, at *1 (J.P.M.L. Oct. 19, 2007) (MDL No. 1877).

significant number of common events, defendants, and/or witnesses."[30]  In *In re Federal National Mortgage Association Securities, Derivative & ERISA Litigation*, for example, this Panel transferred securities actions, derivative actions, and ERISA actions brought against Fannie Mae to one district for coordinated pretrial proceedings, even though the cases raised a variety of different theories of liability.[31]  The Panel determined that transfer was warranted because:

> All actions share factual questions arising out of alleged accounting irregularities at Fannie Mae as detailed in the September 2004 Office of Federal Housing Enterprise Oversight Report.  Whether the actions be brought by securities holders seeking relief under the federal securities laws, shareholders suing derivatively on behalf of Fannie Mae, or participants in Fannie Mae's retirement savings plan suing for ERISA violations, all actions can be expected to focus on a significant number of common events, defendants, and/or witnesses.[32]

This Panel also routinely transfers cases for coordinated or consolidated pretrial proceedings even when the cases involve unique damages and causation issues.[33]

---

[30]    *In re Fed. Nat'l Mortgage Assoc. Secs., Derivative & ERISA Litig.*, 370 F. Supp. 2d 1359, 1360-61 (J.P.M.L. 2005); *In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, __ F. Supp. 2d __, 2007 WL 3119378, at *1 (J.P.M.L. Oct. 16, 2007) (MDL No. 1871); *see also, e.g., In re Delphi Corp. Secs., Derivative & "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1359-60 (J.P.M.L. 2005); *In re Merck & Co., Secs., Derivative & ERISA Litig.*, 360 F. Supp. 2d 1375, 1376-77 (J.P.M.L. 2005).

[31]    370 F. Supp. 2d at 1360-61.

[32]    *Id.; see also In re Citifinancial Servs. Inc. Prescreened Offer Litig.*, 474 F. Supp. 2d 1359, 1360 (J.P.M.L. 2007) ("Regardless of any differences among the actions, they raise common factual questions regarding Citifinancial's prescreening practices.").

[33]    *See, e.g., In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005) (consolidating actions related to risks of Vioxx and rejecting argument that unique questions of fact counseled against consolidation); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 990 F. Supp. 834, 836 (J.P.M.L. 1998) (finding the "core issue" in more than 200 cases was the "causal connection" between diet drugs and side effects; rejecting the argument that consolidation was not warranted because of "non-common questions of fact relating to individual causation and damages").

The efficiency gain from eliminating duplicative discovery will be at a maximum for the six cases pending against Chiquita because discovery has not begun in any of them. The benefits of coordination are also especially compelling here in light of the difficult and complex issues that are likely to arise during discovery. The ATS cases, for example, which involve alleged harm suffered in Colombia, will likely entail foreign discovery. In another recent case brought against a U.S. corporation for tortious acts allegedly committed by the AUC in Colombia, such discovery proved extraordinarily complicated and contentious, raising numerous legal and practical difficulties that required the court's attention.[34] A review of the docket in that case reveals 467 entries, many predictably involving requests to proceed anonymously or to file documents under seal due to alleged safety concerns or sensitivities surrounding discovery of information related to the Colombian government.[35] Similar issues can be expected to arise in each of these six cases.

## B.    Prevention of Inconsistent Rulings.

Transfer for coordinated or consolidated pretrial proceedings would also eliminate the risk of inconsistent rulings on pretrial motions. This is particularly important in the ATS cases because the New Jersey Complaint contains class action allegations, and the purported class appears to include the plaintiffs in the other three ATS cases.[36] The ATS complaints also raise a number of other common legal issues that should be resolved consistently before these cases can proceed to discovery. The ATS complaints assert claims against Chiquita based on the alleged tortious conduct of third-parties and will thus require the court to address whether the

---

[34]    *See Rodriquez v. Drummond Co., Inc.*, No. 7:02-cv-00665-KOB (N.D. Ala.).

[35]    *Id.*

[36]    N.J. Compl. ¶¶ 73-84.

ATS recognizes claims predicated on theories of derivative liability.[37]  Many causes of action asserted in the ATS complaints constitute "violation[s] of the law of nations" under 28 U.S.C. § 1350 only when committed by state officials.[38]  Consequently, each court will have to address whether "color of law" analysis from cases interpreting 42 U.S.C. § 1983 should be incorporated into the ATS's "state action" requirement, such that the AUC's alleged actions may be attributed to the Colombian government.[39]  The ATS cases also raise sensitive issues of justiciability, as the judiciary's reluctance to interfere with the foreign policy prerogatives of Executive Branch, or the unwillingness of U.S. courts to sit in judgment of the acts of a foreign sovereign, may well render plaintiffs' claims nonjusticiable under the "political question" or "act of state" doctrines.[40]  Even the ATS plaintiffs' state common-law claims are likely to entail complicated choice-of-law considerations, including the potential interpretation and application of Colombian law.[41]

        Similarly, the derivative cases raise significant, common legal issues that should be resolved by a single judge.  These include whether plaintiffs are required to make demand on the Board of Directors before their lawsuit can proceed; if so, whether litigation should be stayed in favor of an investigation by a special litigation committee of the Board; and whether particular

---

[37]     See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 182 (1994) (holding that accessorial liability may not be imposed in actions brought under federal statutes unless those statutes authorize it explicitly).

[38]     Kadic v. Karadzic, 70 F.3d 232, 243 (2d Cir. 1995).

[39]     See, e.g., Doe I v. Exxon Mobil Corp., 393 F. Supp. 2d 20, 26 (D.D.C. 2005) ("Just as aider and abetter liability for international law violations has been rejected by some courts as overly expansive and beyond Congress' mandate, basing liability for Alien Tort Statute violations on color of law jurisprudence is a similar overreach.").

[40]     See Corrie v. Caterpillar, __ F.3d __, 2007 WL 2694701, at *8 (9th Cir. Sept. 17, 2007) (No. 05-36210).

[41]     See, e.g., Estate of Rodriquez v. Drummond Co., 256 F. Supp. 2d 1250, 1257-58 (N.D. Ala. 2003) (evaluating whether plaintiff had standing under Colombian law to bring wrongful death claim).

conduct amounts to a breach of fiduciary duty. Allowing these actions to proceed in different

jurisdictions risks subjecting the corporation and individual defendants to multiple, potentially

inconsistent rulings. These considerations are particularly heightened in the context of

shareholder's derivative suits, "where the stockholder sues, not in his own right, but in that of the

corporation and on Behalf of his fellow stockholders. Often many such suits by other

stockholders are brought, attacking the same transactions. The cost of defending these multiple

actions may well do serious harm to the very corporation in whose interest they are supposedly

brought."[42]

        It is equally important that one judge preside over motion practice and discovery

in both types of cases, ATS and derivative. Allowing them to proceed before different courts

would pose a serious risk of parties asserting and prevailing on inconsistent theories regarding

Chiquita's liability arising from a single alleged course of conduct.

    C.    **Conservation of Resources.**

        Finally, transfer for coordinated or consolidated pretrial proceedings would

conserve the resources of the parties and the judiciary. Transfer would clearly conserve

Chiquita's resources, as it could argue its legal defenses in response to the six complaints in

consolidated pretrial motions. By eliminating duplicative discovery, transfer would also

conserve all parties' resources by ensuring that witnesses for both sides with knowledge of the

facts and circumstances surrounding Chiquita's alleged payments to the AUC would not need to

participate in discovery simultaneously in five different jurisdictions. Perhaps most important,

---

[42]     *MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958); *see also Horn v. Raines*, 227
F.R.D. 1, 2 (D.D.C. 2005) (ordering consolidation of derivative actions and quoting *MacAlister*);
*Millman ex rel. Friedman's, Inc. v. Brinkley*, No. 1:03-CV-3831-WSD, et al., 2004 WL
2284505, at * 2 (N.D.Ga. Oct. 1, 2004) (same).

consolidation would greatly conserve judicial resources. Adjudicating both the ATS cases and the derivative cases will require familiarity with Chiquita's business operations in Colombia over the course of several years. It would be a waste of judicial resources for more than one judge to familiarize himself or herself with these complex facts, decide pretrial motions on complicated legal questions, and potentially oversee foreign discovery.

### III.   Chiquita Requests Transfer to the United States District Court for the District of Columbia.

Chiquita respectfully requests that the Panel transfer the cases listed in the Schedule of Actions that are not already pending in the United States District Court for the District of Columbia to that court, which is the most appropriate forum.[43] Two of the six actions, including the first-filed action, are pending in the District of Columbia, which is also the only jurisdiction where both an ATS suit and a derivative suit have been filed.[44]

In addition, plaintiffs allege that relevant conduct, including meetings with outside counsel and Department of Justice officials regarding payments to the AUC, occurred in D.C.[45] To the extent witnesses from these meetings are relevant to plaintiffs' allegations against Chiquita, those witnesses would be located in D.C.

---

[43]   Both of the D.C. actions have been assigned to Judge Paul Friedman, who is an experienced MDL judge. *See, e.g., In re Merscorp. Inc., et al., Real Estate Settlement Procs. Act (RESPA) Litig.*, 473 F. Supp. 2d 1379, 1380 (J.P.M.L. 2007) (noting that judge panel selected as the transferee judge "is an experienced jurist in multidistrict litigation").

[44]   *See In re Merscorp Inc., et al., Real Estate Settlement Procs. Act Litig.*, 473 F. Supp. 2d at 1380 (finding that Southern District of Texas was appropriate transferee forum because "two of the eight actions, including the first-filed action" were already pending there); *In re Jamster Marketing Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006) (finding that Southern District of California was appropriate transferee forum because it "already hosts two of the three constituent actions (including the first filed action)").

[45]   Fla. Compl. ¶¶ 36, 38; N.J. Compl. ¶¶ 34-36; N.Y. Compl. ¶¶ 533-34, 540; D.C. Deriv. Compl. ¶¶ 9, 26, 27, 78-83, 87, 100, 100(b), 100(c), 101(c), 102; Ohio Compl. ¶¶ 10, 43, 47, 49-50, 52, 53, 56, 67.

The District of Columbia is also the forum where Chiquita entered a guilty plea to criminal charges stemming from payments to the AUC, from which the allegations in these civil cases arise. Because Chiquita was subject to a grand jury investigation in D.C., a significant number of documents relating to Chiquita's former Colombia operations have already been collected in D.C., and Chiquita's counsel retain copies of those documents in D.C.[46]

The District of Columbia would be reasonably convenient for all parties and counsel involved. Chiquita's counsel is located in D.C., and three of the six plaintiffs' groups – the D.C. ATS plaintiffs, the D.C. derivative plaintiffs, and the New Jersey plaintiffs – have D.C. counsel. Counsel for the Florida plaintiffs are also litigating another ATS case brought against a different corporation in the District of Columbia, which was transferred from the Southern District of Florida pursuant to 28 U.S.C. § 1404 and consolidated with a similar case brought by the D.C. ATS plaintiffs' counsel.[47] Counsel for many of the individual defendants, including all of Chiquita's current directors who have been named as defendants, are also located in D.C.[48]

---

[46]     Declaration of James E. Thompson ¶ 4, attached as Exhibit H. *See In re ConAgra Peanut Butter Prods. Liab. Litig.*, 495 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007) (finding that Northern District of Georgia was appropriate transferee forum because "governmental agency that investigated the contamination [is] located there" and relevant documents and witnesses are therefore likely to be found there); *In re Orthopaedic Implant Device Antitrust Litig.*, 483 F. Supp. 2d 1355, 1355 (J.P.M.L. 2007) (finding that Southern District of Indiana "where related grand jury proceedings are located" was appropriate transferee forum); *In re Southeast Hotel Props. Ltd. P'ship Investor Litig.*, 796 F. Supp. 538, 539 (J.P.M.L. 1992) (finding that Western District of North Carolina was appropriate transferee forum in part because defendant's "bankruptcy proceedings are pending there" and therefore "many relevant witnesses and documents are likely to be found in [that district]").

[47]     *See Quinteros v. Dyncorp*, No. 07-cv-01042-RWR (D.D.C.)

[48]     Declaration of James E. Thompson ¶ 7.

13

## CONCLUSION

For the reasons stated above, the Panel should transfer the cases listed in the attached Schedule of Actions that are not already pending in the United States District Court for the District of Columbia to that court pursuant to 28 U.S.C. § 1407, for coordinated or consolidated pretrial proceedings with the civil actions listed in the Schedule of Actions that are already pending in that district.

Respectfully submitted,

Eric H. Holder, Jr.
John E. Hall
James M. Garland
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Jonathan M. Sperling
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Facsimile: (212) 841-1010

COVINGTON & BURLING LLP

*Attorneys for Defendants*
*Chiquita Brands International, Inc. &*
*Chiquita Fresh North America LLC*

Dated:        November 26, 2007

14